**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DON TEDFORD, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 09-409 |
| JEFFREY BEARD, Secretary, | ) | |
| Pennsylvania Department of Corrections, | ) | |
| <u>et al.</u>, | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In his motion for discovery [ECF No. 32], Petitioner Don Tedford seeks the production of

twenty-six categories of documents and other evidence, which he lists at ¶¶ 7(a) through 7(z).[1]

Petitioner also requests at ¶ 8 an Order from this Court directing Respondents to allow him to

inspect and photograph all physical evidence collected during the course of the police

investigation in his criminal case.  For the reasons stated below, the Court will GRANT

Petitioner's motion with respect to his request in ¶ 7(x) for any previously undisclosed police

reports regarding the "further investigation" referenced in the affidavit of probable cause, and

will DENY his motion in all other respects.


I.      **Relevant Background**[2]

The victim in this case, Jeanine Revak, was raped and murdered on January 10, 1986.

---

[1]  Because the discovery requests of Petitioner in ¶¶ 7(a) through 7(z) span ten pages of
his motion, the Court will not repeat them in this Memorandum Opinion.

[2]  Respondents have submitted the entire original state court record ("SCR") from the
Court of Common Pleas of Butler County, which includes documents filed with that court and
transcripts of all relevant proceedings.  The documents contained in the SCR are numbered 1
through 226 and shall be cited to as "SCR No. ___ ."

Petitioner was tried for those crimes in February of 1987, in the Court of Common Pleas of Butler County. He was represented by Charles A. Schwartz, Esq. The jury found him guilty of first-degree murder and rape. Following a separate sentencing hearing, that same jury sentenced him to death on the first-degree murder charge.

Petitioner did not timely file post-trial motions. However, he later received permission to file such motions *nunc pro tunc*, which he did on April 27, 1987. The trial court appointed Peter Shaffer, Esq., of the Butler County Public Defender's Office, to represent him and amended post-trial motions were filed. (See SCR Nos. 63 and 95). The motions raised multiple issues of trial court error and over 80 claims of ineffectiveness of trial counsel.

On February 1-3, 1988, the trial court presided over an evidentiary hearing on Petitioner's post-trial motions. A number of witnesses testified at the hearing, including Petitioner's trial counsel, Charles Schwartz, and Robert Sintz, a UPS delivery man. Petitioner also introduced many exhibits, which included, *inter alia*, numerous police reports.[3]

On April 29, 1988, the trial court issued a Memorandum Opinion and Order which denied Petitioner's post-trial motions. (SCR No. 98, Commonwealth v. Tedford, C.A. No. 241 of 1986, slip op. (C.P. Butler, April, 29, 1988)). Petitioner appealed and on December 13, 1989, the Supreme Court of Pennsylvania affirmed his judgment of sentence. Commonwealth v. Tedford, 567 A.2d 610 (Pa. 1989).

On or around July 12, 1995, Petitioner filed a *pro se* motion for post-conviction relief ("PCRA"). The PCRA Court appointed Victor Vouga, Esq., to represent him. Matthew C.

---

[3] The exhibits admitted during the evidentiary hearing held on February 1-3, 1988 are included in the record submitted by Respondents.

Lawry, Esq., with the Center for Legal Education, Advocacy and Defense Assistance (LEADA), began assisting Vouga in 1996.

In January 1997, Billy H. Nolas, Esq., and Robert Brett Dunham, Esq. (also with LEADA)[4] entered an appearance on Petitioner's behalf and filed an amended PCRA petition raising, *inter alia*, claims of prosecutorial misconduct under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and claims of ineffective assistance of trial counsel (Schwartz) and post-trial and direct appeal counsel (Shaffer). (SCR No. 119).[5]

On October 2, 1997, Petitioner filed a motion for PCRA discovery. (SCR No. 126). The Commonwealth opposed discovery on a number of bases, including that the documents requested would normally be contained in the file of trial counsel. The Commonwealth asserted that it was Petitioner's current counsels' responsibility to first attempt to obtain Attorney Schwartz's file for themselves. (SCR No. 128). The PCRA Court heard argument on the motion on January 13, 1998. On May 18, 1998, it issued an Order instructing that "Petitioner shall direct a final demand for discovery materials upon prior counsel. If prior counsel does not respond, or does not have said materials, Petitioner is directed to file a Motion to Schedule Hearing with this Court such that the Court may utilize its subpoena powers if necessary and/or the court may further consider the Petitioner's request." (SCR No. 131).

On September 3, 1998, Petitioner filed a motion to schedule a hearing on his discovery

---

[4] Vouga eventually withdrew as counsel. LEADA closed and Lawry, Nolas, and Dunham became employed with the Capital Habeas Corpus Unit of the Federal Community Defender Office for the Eastern District of Pennsylvania (hereinafter the "Capital Habeas Corpus Unit").

[5] Petitioner filed an another amended PCRA petition on August 27, 2002. (SCR No. 168).

requests. (SCR No. 132). On December 7, 1998, he filed an Unopposed Motion For Order

Compelling Delivery of Trial Counsel's Files, which the PCRA Court granted. (SCR No. 134).

The Commonwealth next filed a Motion To Deny Discovery Motion and Dismiss PCRA Petition

Without a Hearing. (SCR No. 135). The PCRA Court then issued an Order which denied

Petitioner's motion for discovery and notified him that it intended to grant the Commonwealth's

motion to dismiss. (Id.) Petitioner filed a brief in opposition (SCR No. 136) and argument was

heard on September 17, 1999.

On January 28, 2000, the PCRA Court issued a Memorandum Opinion and Order in

which it denied the PCRA petition as untimely. (SCR No. 144). The Supreme Court of

Pennsylvania reversed on October 18, 2001, and remanded the case to the PCRA Court to

consider the merits of the claims raised by Petitioner. Commonwealth v. Tedford, 781 A.2d

1167 (Pa. 2001).

After remand, Petitioner filed with the PCRA Court a Consolidated Renewed Motion For

Discovery and Motion for Leave To File Amended Petition. (SCR No. 160). Petitioner set forth

his discovery requests at ¶ 13 of that motion:

> 13.      ... trial counsel did finally provide his file to undersigned counsel.
> Counsel has reviewed the file and determined that it does not contain the
> materials set forth below. Accordingly, Petitioner renews his request for
> discovery of the following materials:
>
> a.      Any and all photographs taken during the investigation of this case,
> including but not limited to, any and all photographs and contact
> sheets of film exposed i) at the scene where the victim's body was
> found, ii) of the victim's body, iii) inside or in the vicinity of the
> Finishing Touch, iv) of the victim's automobile or the site where
> said automobile was found, or v) of clothing belonging to or seized
> from the defendant;

b.       Any and all scene drawings of i) the scene where the victim's body was found, ii) the inside of or the vicinity of the Finishing Touch, or iii) the site where the victim's automobile was found;

c.       Any and all audiotapes of witness interviews, including but not limited to i) the interviews of James Revak [the victim's husband] conducted by the Pennsylvania State Police and the Cranberry Township police, ii) any audiotapes of telephone calls made by Mr. Tedford, and iii) any audiotapes of interviews of Elizabeth Manuel;

d.       Any logs or copies of logs obtained by law enforcement agencies from UPS, reflecting deliveries to the Finishing Touch;

e.       Any and all crime lab reports, including i) all drawings made by the laboratories or by criminalists, ii) any and all fiber analysis, and iii) any reports concerning an analysis of striation patterns that was conducted in an attempt to match the purported murder weapon with twine seized from the Finishing Touch.  If no report was prepared, Petitioner requests a copy of all materials used to make the comparison and any results from the comparison;

f.       Any fingerprints taken and the results of any fingerprint comparisons that were performed;

g.       Any and all polygraph examination results; and

h.       All property seized from the [Petitioner].

(Id. at ¶ 13).

The discovery requests that Petitioner made to the PCRA Court in his renewed discovery motion at ¶ 13 coincide with the requests he makes in the instant motion before this Court [ECF No. 32] at ¶ 7 as follows:

–       the requests made at ¶ 13(a) are the same as those he makes in the instant motion at ¶ 7(a)(i)-(v);

–       the requests made at ¶ 13(b) are the same as those he makes in the instant motion at ¶ 7(b) (i)-(iii);

–   the requests he made at ¶ 13(c) are the same as those he makes in the instant motion at ¶ 7(c)(i)-(iv) only to the extent that he requests audiotapes of interviews conducted by state or local law enforcement of him and of witnesses, including James Revak and Elizabeth Manuel;

–   the requests that he made at ¶ 13(d) are the same as those he makes in the instant motion at ¶ 7(d);

–   the requests he made at ¶ 13(e) are the same as those he makes in the instant motion at ¶ 7(e)(i)-(ii) and (iv) only to the extent that he seeks crime lab reports and drawings;

–   the requests he made at ¶ 13(f) are the same as those he makes in the instant motion at ¶ 7(m) only to the extent that he seeks any prints collected during the police investigation and the results of any print comparisons that were performed;

–   the request he made at ¶ 13(g) is the same as the one he makes in the instant motion at ¶ 7(p) only to the extent that he seeks all polygraph examination results;

–   the request he made at ¶ 13(h) is the same as the one he makes in the instant motion at ¶ 7(z).

Petitioner did not request in his renewed motion for discovery before the PCRA Court that which he now seeks from this Court in the instant motion at ¶ 7(a)(vi)-(ix), ¶ 7(b)(iv), ¶ 7(c)(v)-(vi), ¶ 7(e)(iii) and (vi), ¶¶ 7(f)-(l); ¶¶ 7(n)-(o), ¶¶ 7(q)-(y), and ¶ 8.

On February 26, 2002, the PCRA Court heard argument on Petitioner's motion for discovery.[6]  On June 12, 2002, it issued a Memorandum Opinion and Order which denied Petitioner's motion.  (SCR No. 163, Commonwealth v. Tedford, C.A. No. 241 of 1986, slip op. (C.P. Butler, June 12, 2002), hereinafter "6/12/02 Op.").  The court explained that pursuant to Pennsylvania Rule of Criminal Procedure 902(E)(2), which applies to first counseled petitions in death penalty cases, discovery is permitted only upon leave of court for good cause shown.  (Id.

_____

[6]  After oral argument, Petitioner's counsel filed a letter brief (SCR No. 162) in which he provided additional argument in support of the claim that some of the requested photographs would assist Petitioner in demonstrating prejudicial alteration of the trial transcript.

at 2). See also Commonwealth v. Bryant, 855 A.2d 726, 749-50 (Pa. 2004) ("A showing of good cause requires more than just a generic demand for potentially exculpatory evidence." quoting Commonwealth v. Carson, 913 A.2d 220, 261 (Pa. 2006)); Commonwealth v. Collins, 957 A.2d 237 (Pa. 2008) (PCRA court did not err in denying petitioner's discovery requests, which were premised on the mere speculation that possible trial court errors or potential exculpatory evidence could be discovered). The PCRA Court reviewed each request Petitioner made and concluded that with respect to each request he failed to show that good cause existed to justify a grant of discovery. (Id. at 3-16).

On March 5, 2004, by Memorandum Opinion and Order the PCRA Court dismissed all of Plaintiff's post-conviction claims except for the claim that his post-trial and appellate counsel (Shaffer) had labored under a conflict of interest. (SCR No. 193). The PCRA Court held an evidentiary hearing limited to that remaining claim on May 18, 2004. On July 16, 2004, it issued a Memorandum Opinion and Order which denied that claim. (SCR No. 208).

Petitioner appealed to the Supreme Court of Pennsylvania. On November 18, 2008, it affirmed the orders of the PCRA Court. Commonwealth v. Tedford, 960 A.2d 1 (Pa. 2008). It expressly held that "the PCRA court did not err in dismissing all but one of Petitioner's claims without discovery or a hearing." Id. at 55. It denied reargument on January 26, 2009.

On April 8, 2009, Petitioner commenced habeas proceedings in this Court by filing a *pro se* motion for appointment of counsel, for *in forma pauperis* status, and for a stay of execution. The Court granted Petitioner's requests and appointed Lawry and Amy Donnella, Esq. (also with the Capital Habeas Corpus Unit) as his counsel.

On November 18, 2009, Petitioner filed his Petition For Writ Of Habeas Corpus Pursuant

To 28 U.S.C. § 2254. [ECF No. 23]. He raises eighteen claims for relief and numerous subclaims. He also has filed an Appendix [SCR No. 26], which contains documents (labeled A through V) that he cites in support of his claims.

In his "Prayer For Relief," Petitioner requests "such discovery as is necessary for full and fair resolution of the claims contained in the Petition" and also requests "[t]hat an evidentiary hearing be conducted on all claims involving disputed issues of fact[.]" [ECF No. 23 at 93]. Accordingly, the Court ordered counsel for Petitioner to file a motion for discovery and memorandum in support in which they "must specifically set forth each claim on which discovery is sought and explain why, with respect to each claim, prior state proceedings in the case did not adequately develop the information sought." [ECF No. 24]. The Court also informed the parties that the dates on which counsel for Petitioner must file his motion for evidentiary hearing is deferred until further order of Court pending resolution of the motion for discovery. [ECF No. 28].

Petitioner has filed his motion for discovery [ECF No. 32] and memorandum of law in support [ECF No. 33]. He seeks discovery on Claim II, in which he raises broad allegations that trial counsel was ineffective for failing to investigate and challenge the Commonwealth's evidence; Claim IV, in which he alleges that material, exculpatory evidence was withheld from the defense that would have materially aided him in proving his innocence; and, Claim V, in which he alleges that jailhouse informants failed to acknowledge deals they had entered into with the Commonwealth in exchange for their testimony against Petitioner.

Respondents oppose all but one of Petitioner's discovery requests. [ECF No. 39].

## II.    Legal Standard

In describing the role of federal habeas proceedings, the Supreme Court, in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887 (1983), stated:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

Because of the nature of federal habeas corpus, the expansive construction of relevance in civil cases – to embrace all information "reasonably calculated to lead to the discovery of admissible evidence," as specified in Federal Rule of Civil Procedure 26(b)(1) – is not appropriate.  <u>See</u> <u>Harris v. Nelson</u>, 394 U.S. 286, 300 (1969) ("broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas corpus proceeding."); <u>Deputy v. Taylor</u>, 19 F.3d 1485, 1493 (3d Cir. 1994) ("petitioners are not entitled to go on a fishing expedition through the government's files in hopes of finding some damaging evidence).

Rather, discovery is authorized in Rule 6(a) of the Rules Governing Section 2254 Cases In The United States District Court only by leave of court upon a showing of good cause.  A showing of good cause is made "where *specific allegations before the court* show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief."  <u>Bracey v. Gramley</u>, 520 U.S. 899, 908-09 (1997) (emphasis added), <u>quoting</u> <u>Harris</u>, 394 U.S. at 300.  <u>See</u> <u>also</u> <u>Deputy</u>, 19 F.3d at 1493; <u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284, 301 (3d Cir. 1991) ("bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery"); <u>Mayberry v. Petsock</u>, 821 F.2d 179, 185 (3d Cir. 1987) (same).

In determining whether to exercise its discretionary authority to permit discovery, a federal habeas court must also take into account any lack of diligence on the petitioner's part in developing the record in state court.  See, e.g., Hooks v. Workman, 606 F.3d 715, 730-31 n.14 (10th Cir. 2010) ("Only when a petitioner diligently sought to develop the factual basis of a habeas claim in state court can he utilize the procedures set out in Rule[ ] 6[.]"); Moore-El v. Luebbers, 446 F.3d 890, 900-01 (8th Cir. 2006) (district court did not abuse its discretion in denying petitioner discovery when the petitioner failed to develop the evidence at issue in the state post-conviction proceeding); Crawford v. Head, 311 F.3d 1288, 1329 (11th Cir. 2002) (district court correctly denied discovery because the petitioner "failed to exercise sufficient diligence in seeking testing of items mentioned in the GBI report while in state court."); Maynard v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991) (explaining that "[t]he State further points out that [the petitioner] made no request to the state post-conviction court to review the files ... that he now deems critical, and that he had ample opportunity to seek these documents at the state post-conviction proceeding, but chose not to.  In sum, we think that [the petitioner] had adequate opportunity to explore the files of the state, and that the district court was not in error for denying [his] discovery request."); Byrd v. Armontrout, 880 F.2d 1, 7 (8th Cir. 1989) (discovery properly denied because petitioner failed to explain his failure in state proceedings to try to discover and present evidence now sought in federal proceedings).

Although federal habeas courts always had to inquire into the efforts the petitioner made in developing the record in state court, the inquiry has become all the more important since the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").  AEDPA, as codified at 28 U.S.C. § 2254(e)(2),

prohibits a federal district court from granting a petitioner an evidentiary hearing if he was not reasonably diligent in trying to develop the record in state court.  See Williams v. Taylor, 529 U.S. 420 (2000); See, e.g., Lewis v. Horn, 581 F.3d 92, 104-05 (3d Cir. 2009) (the purpose of § 2254(e)(2) is "to ensure the prisoner undertakes his own diligent search for evidence"); Taylor v. Horn, 504 F.3d 416, 437 (3d Cir. 2007) ("Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.")).

In Isaacs v. Head, 300 F.3d 1232 (11th Cir. 2002), the petitioner sought leave from the district court to take discovery from the media sources that were present at his trial in order to determine the contents of a prayer that was given at the opening of his trial.  The district court denied discovery and the presentation of evidence concerning the prayer.  The United States Court of Appeals for the Eleventh Circuit held on appeal that "[i]n passing AEDPA  ... Congress modified the discretion afforded to the district court and erected additional barriers limiting a habeas petitioner's right to discovery or an evidentiary hearing."  Isaacs, 300 F.3d at 1248-49.  It concluded that the petitioner had not been "reasonably diligent in trying to develop the factual record while in state court" and the district court had, therefore, correctly denied his requests for discovery and an evidentiary hearing.  Id.  The court also observed that:

> [The petitioner] does not explain why the discovery that he seeks now is any different from the discovery that was available to him in state courts.  Under these circumstances, we conclude that the district court properly denied [the petitioner's] request to conduct additional discovery concerning the prayer because he neither exercised sufficient diligence to satisfy the requirements of § 2254(e)(2) nor showed "good cause" as required by Rule 6(a).

Id. at 1250.

### III.    The Discovery Requests

#### A.    Petitioner's request in ¶ 7(x) for any police report providing details about the "further investigation" regarding his whereabouts on the day of the murder

In ¶ 7(x), Petitioner seeks, *inter alia*, the production of "any previously undisclosed police reports, including but not limited to the report of 'further investigation' referenced in the Commonwealth's Affidavit of Probable Cause[.]"  The reference to a report about "further investigation" relates to language in the filed affidavit of probable cause which indicates that Petitioner never left the Finishing Touch on the day of the murder.

Respondents agree that Petitioner has established good cause to require it to search for and produce any such documents, if they exist.  Accordingly, the Court shall grant this discovery request.

#### B.    The discovery requests that Petitioner did not make to the PCRA Court

As set forth above, in the instant motion Petitioner makes many discovery requests that he did not make to the PCRA Court.  Specifically, he did not seek discovery in state court of that which he now seeks by order of this Court in the instant motion at ¶ 7(a)(vi)-(ix), ¶ 7(b)(iv), ¶ 7(c)(v)-(vi), ¶ 7(e)(iii) and (vi), ¶¶ 7(f)-(l), ¶¶ 7(n)-(o), ¶¶ 7(q)-(y), and ¶ 8.  Petitioner had more than an adequate opportunity to make these discovery requests to the PCRA Court and failed to do so.  Because he did not, he is not entitled to the requested discovery in this federal habeas proceeding.

### C.    The discovery requests that Petitioner made to the PCRA Court

#### 1.    Paragraphs 7(a) and (b) – photographs and scene drawings

In ¶¶ 7(a)(i)-(v) and (b)(i)-(iii) of Petitioner's discovery motion, he makes a broad request for the production of all photographs taken and all scene drawings made during the investigation of his case.  He seeks production of these items to support Claim IV (his <u>Brady</u> claim) and makes only the very general assertion that the photographs and drawings are "likely to provide exculpatory evidence[.]"  [Memorandum, ECF No. 33 at 8].[7]  He only references in Claim IV one photograph (or series of photographs) and one scene drawing.  Therefore, those are the only items the Court will consider.  They are:  (1) photograph(s) Officer Peters took of the victim at the crime scene; and (2) drawings of the crime scene referenced in a police report dated  January 11, 1986.  [<u>See</u> Petition, ECF No. 23 at ¶¶ 109-12].

#### (a)    photographs taken by Officer Peters

Petitioner does not allege that the Commonwealth failed to disclose all of the photographs that Officer Peters took at the crime scene.  His claim is that it suppressed one or more photographs that he took of the victim's back that would have contradicted the Commonwealth's theory as to when and where she was murdered.  Specifically, he alleges that "[a]t the preliminary hearing, Officer Peters testified that, before Ms. Revak's body was moved, he pulled up her blouse *to take a photograph to show that lividity was not evident on her back*.  Those

---

[7]  Although Petitioner refers the Court to ¶¶ 104-08 of the habeas petition in support of these requests, those paragraphs make no reference to photographs or scene drawings.  The Court assumes that Petitioner meant to reference ¶¶ 109-12, where he does discuss photographs and scene drawings.

photographs were never provided to the defense." [Petition, ECF No. 23 at ¶ 110 (citing 4/3/86 Preliminary Hr'g Tr. at 84) (emphasis added)].

Petitioner further states that Dr. Abernathy, the forensic pathologist who performed the autopsy of the victim, based his conclusion as to the time of her death in part on the *presence of lividity on her back*.  Consequently, Petitioner argues, the photographs Officer Peters took were exculpatory because they would have shown *the absence of lividity* on her back, thereby discrediting the Commonwealth's theory that she died sometime in the middle of the day at the Finishing Touch.  Because the Commonwealth allegedly failed to disclose such photographs, Petitioner claims, it violated its obligation under Brady.

If the Court were to take Petitioner's allegations at face value, it might agree that they are specific enough to entitle him to discovery of the photographs at issue.  The Court will not do so, however, because a review of the transcript from the preliminary hearing shows that his paraphrasing of Officer Peter's testimony is inaccurate.  At page 84 of that hearing, Officer Peters testified as follows during cross-examination by defense counsel (Schwartz):

> Q.   Did he [Dr. Abernathy] actually change the clothing [of the victim] at that time?
>
> A.   The only thing we pulled was her back of her blouse.
>
> Q.   See lividity on her body.  Who did that?
>
> A.   I did.
>
> Q.   Per Dr. Abernathy's instruction?
>
> A.   No.  After Dr. Abernathy examined the individual, the, the victim, and before we turned her over *I wanted to get a picture of lividity on her back, if there was any at all*, and I lifted up the back of her blouse.

(4/3/86 Preliminary Hr'g Tr. at 84 (emphasis added)).

This excerpt demonstrates, contrary to Petitioner's allegation, that Officer Peters did not testify that he took any photographs *to show that lividity was not evident* on the victim's back. His allegation that photograph/s exist that show the presence of lividity on the victim's back does not pass a review of the testimony upon which he relies. That likely explains why, during argument on Petitioner's discovery motion before the PCRA Court, Petitioner's counsel candidly acknowledged that he did not know whether the photographs existed or if they were exculpatory. (2/26/02 Tr. at 7-8).

During that same oral argument, counsel for the Commonwealth challenged Petitioner's assertion that the prosecution failed to disclose any photograph taken at the crime scene. She stated that all such photographs were made available to Schwartz. (Id. at 7). The PCRA Court credited her assertion and held:

> Petitioner does not explain how good cause exists for the grant of this discovery. Petitioner's contention is only based on his belief that other photographs exist that were not provided to the defense. As noted by the Commonwealth during argument, the evidence was provided to Petitioner's trial counsel. Petitioner's trial counsel previously provided all materials in his files to Petitioner. Furthermore, the Petitioner fails to explain how these particular photographs would be exculpatory.

(SCR No. 163, 6/12/02 Op. at 5).

Upon an independent review of the record and the parties' briefing to the Court on this issue, the Court concludes, similar to the PCRA Court, that Petitioner has failed to establish good cause for the production of any such photographs.

### (b)      scene drawings

The Court reaches the same conclusion with respect to Petitioner's request for "scene

drawings."  In the habeas petition, he points out that a police report dated January 11, 1986 notes

that "a draft sketch of the crime scene will be attached to this report."  [Petition, ECF No. 23 at ¶

109].  He contends that that drawing was never provided to the defense, and that instead a second

drawing made four months later was produced.  [Id.]  Petitioner seeks discovery of the sketch

referenced in the January 11, 1986, police report.  He has not, however, – in either his filings

with this Court or in argument before the PCRA Court – explained why the production of the

sketch, if it even exists, would advance any of his claims.  For this reason alone, Petitioner has

not shown good cause for this discovery request.

Additionally, as Respondents contend, although Petitioner argues that there were two

scene drawings and that the Commonwealth only produced the second one, it is quite possible

that the drawing referenced in the January 11, 1986 police report was prepared some time later

and there was only one drawing, which is the drawing the Commonwealth produced.  The

Commonwealth's counsel made this assertion during argument before the PCRA Court and

further stated that the prosecution disclosed all scene drawings to the defense prior to trial.

(2/26/02 Tr. at 15).  The PCRA Court credited her assertion and found that "Petitioner's trial

counsel was provided all drawings."  (6/11/02 Op. at 10).

Thus, based upon all of the foregoing, the Court concludes that there is no good cause to

warrant the discovery Petitioner requests in ¶¶ 7(a)(i)-(v) and (b)(i)-(iii) and those requests will

be denied.


### 2. Paragraph 7(c) – audiotapes of police interviews

In ¶ 7(c), Petitioner seeks the production of "[a]ny and all transcripts, notes, audiotapes or

videotapes of interviews conducted as part of the investigation of this case by federal, state, or local law enforcement personnel, or conversations with any and all witnesses, including but not limited to: (i) James Revak; (ii) Don Tedford; (iii) Elizabeth Manuel; [and] iv) interviews with anyone who served as a witness in the trial of this case[.]" Before the PCRA Court Petitioner only sought discovery of audiotapes and that is all the Court will consider here.[8]

Petitioner has put forth no basis for the production of audiotapes of "any and all witness" interviews. That request will be denied as overbroad and lacking good cause shown. He also fails to provide any argument to support his contention that he is entitled to audiotapes of the police interviews of him. Therefore, that request will likewise be denied.

In support of his request for the production of the audiotape recordings of the police interviews of James Revak and Elizabeth Manuel, Petitioner makes the purely speculative assertion that the recordings "likely contain exculpatory information that has never been disclosed to" him. [Memorandum, ECF No. 33 at 11]. Such speculation fails to meet the specificity required in order to receive discovery in federal habeas.

Petitioner also suggests that the recording of James Revak's *January 1986 police interview* would assist him proving his claim that Revak's *February 1987 trial testimony* has been altered. That argument is entirely unconvincing. It also lacks persuasiveness because during the state court proceeding the Commonwealth produced to Petitioner the audiotapes of his

---

[8] Petitioner now contends that neither the audiotape nor the transcript of the police interview of James Revak was provided to the defense. [Petition, ECF No. 23 at ¶ 23]. During argument before the PCRA Court, Petitioner's counsel stated that the transcript of the interview had been provided to the defense and that he sought only the audiotape of it. He argued that the audiotape was necessary because its quality is better than the transcript. (2/26/02 Tr. at 16-17; SCR No. 163, 6/12/02 Op. at 10).

trial. Therefore, he has received all necessary recordings to litigate his claim that Revak's trial testimony was altered and he is entitled to no additional discovery on that claim.

Based upon all of the foregoing, the Court concludes that Petitioner has not shown good cause to warrant the discovery he requests in ¶ 7(c). Therefore, those requests will be denied.

### 3.    Paragraph 7(d) – UPS delivery logs

In ¶ 7(d), Petitioner requests "[a]ny logs or copies of logs obtained by law enforcement agencies from UPS, reflecting deliveries to the Finishing Touch." He claims that the UPS delivery logs are exculpatory and that the Commonwealth failed to disclose them in violation of Brady.

To show why the UPS delivery logs are exculpatory and he is entitled to their production, Petitioner states that at his trial, in order to explain why the victim's car was found in a parking lot miles away from the Finishing Touch, the Commonwealth introduced evidence to establish that on the day of her rape and murder (January 10, 1986) there was a 44-minute span between 10:02 a.m. and 10:46 a.m. during which Petitioner's presence at the store could not be verified. It presented the theory to the jury that sometime during that 44-minute span, Petitioner left the Finishing Touch and drove to the parking lot and picked up the victim. She then accompanied him back to the store where he raped and murdered her.

In Claim IV of his habeas petition, Petitioner claims that:

The Finishing Touch received a UPS delivery on the morning of January 10. [Petitioner] signed for the delivery and the time was noted. *The UPS delivery log would show that Mr. Tedford was at the Finishing Touch during the time when the prosecution alleged that he was in North Pittsburgh meeting Ms. Revak. The UPS delivery log is identified in police reports but it was never provided to the*

18

*defense.* See Appendix A at 3(17).

[Petition, ECF No. 23 at ¶ 108 (emphasis added)].

Once again, if the Court were to take Petitioner's allegations at face value, it might agree that they are specific enough to entitle him to discovery of the UPS delivery log. The Court will not do so, however, because issues concerning the alleged suppressed UPS delivery log were thoroughly explored during Petitioner's post-trial evidentiary hearing in February 1988. The record of that proceeding shows that Petitioner failed to establish that the UPS delivery log that he references still exits; *or* that the police had obtained it from UPS; *or* that it contained exculpatory information that Schwartz failed to investigate or that the Commonwealth failed to disclose.

In support of his allegation that the police received a UPS delivery log and did not disclose it, Petitioner cites to a police report at "130." [Memorandum, ECF No. 33 at 12]. That police report does not appear to be among the many police reports contained in the Appendix that was filed with his habeas petition. [See ECF No. 26]. The Court has located at least the first page of that report in the record. It was admitted as Defendant's Exhibit 5-E during the February 1988 evidentiary hearing and is contained in the SCR at No. 88-A. That page of the report does not indicate that any UPS delivery log was obtained by the police.

The Court's inquiry could have ended there. Nonetheless, the Court also has reviewed the testimony given during the February 1988 evidentiary hearing where this issue was explored and has determined that it does not support the conclusion that the police obtained any UPS delivery log or that the log contained information helpful to the defense.

During that hearing, Robert Sintz, the UPS employee who made deliveries to the

Finishing Touch during the relevant time period, testified that he did not recall whether he made a delivery to the store on January 10, 1986. (2/1/88 Hr'g Tr. at 28). In response to a question from Petitioner's counsel (Shaffer) asking whether he had had the opportunity to review a log to see if he had made a delivery to the store on that date, Sintz replied: "No. Records after about a year's time are, they usually get rid of them." (Id.) Sintz stated that he did not know if the log records from January 10, 1986, had been preserved and indicated that if they had been they might be located in a UPS facility in either Pittsburgh or Butler. (Id. at 28-31). Sintz further testified that he had been interviewed by the police, and that he had told them that he usually made deliveries to the Finishing Touch at approximately between 9:30 a.m. and 10:00 a.m. (Id. at 29). *Sintz did not state that he gave the police a UPS delivery log.*

Schwartz was also asked about this issue. He stated: "we had determined prior to trial [when the deliveryman was at the Finishing Touch]." (2/2-3/88 Hr'g Tr. at 227). He further testified: "I think [Petitioner] had the information as a matter of fact prior to trial of having signed something for the U.P.S. man and my recollection is that it did not affect that time gap." (Id.)

Based upon the allegations made in Petitioner's habeas petition, his motion for discovery and memorandum in support thereof, the police report he references, and the record from the state evidentiary hearing, the Court finds that Petitioner has not shown that there is good cause to warrant discovery of the requested UPS delivery log. Therefore, his request will be denied.

### 4. Paragraph 7(e) – crime lab reports and criminalist drawings

In ¶ 7(e), Petitioner requests the production of "[a]ny and all crime lab reports, in

whatever format maintained, including: i) all drawings made by the laboratories or by criminalists; ii) any and all fiber analysis; ... iv) any and all reports concerning any analysis of striation patterns that was conducted in an attempt to match the purported murder weapon with twine seized from the Finishing Touch[.]"

The only lab reports/drawings that Petitioner specifically claims were not previously disclosed to the defense are: (1) the laboratory drawings criminologist Scott Ermlick referenced during his trial testimony at pages 249-50; and, (2) a striation analysis and/or comparison that he claims was conducted in an attempt to match twine seized from the Finishing Touch to marks left by the ligature that was placed around the victim's throat. [Petition, ECF No. 23 at ¶ 103, ¶¶ 113-14]. Therefore, those are the only lab reports/drawings that the Court will consider in analyzing this discovery request.

### (a)      Ermlick's drawings

During his trial testimony about blood he observed on the victim's blouse and jacket, Ermlick stated:

> I certainly can tell you that it was not blood stained entirely.  I can tell you that the majority of the blouse was not blood stained, and that the stain was localized to one area which would have been the right neck and chest area.  The jacket, my records or drawings indicate that it was blood stained, but there were were [sic] drops over the right front and right sleeve as well as the right back area.  Certainly not blood saturated in a sense that you would have a continuous stain say from the collar to the hem, long hem.

(N.T. at 250).  Petitioner seeks production of the "drawings" Ermlick referenced, but he does not explain why that information would advance either his ineffective assistance claim or his Brady claim.

Petitioner also alleges that Ermlick's trial testimony was altered and that he actually stated

in the third sentence quoted above that: "The jacket, my records indicate that it was **not** blood stained." [Petition, ECF No. 23 at ¶ 114 (emphasis in petition)]. That allegation does not justify the production of Ermlick's drawings. As the Court already has explained, during the state court proceeding the Commonwealth produced to Petitioner the audiotapes of his trial. Therefore, he has received all the evidence necessary to litigate his claim that Ermlick's trial testimony was altered and he is entitled to no additional discovery on that claim.

**(b)    striation analysis and/or comparison**

In support of Petitioner's allegation that a striation analysis and/or comparison was conducted and not disclosed, and that it must be produced now in discovery, Petitioner cites a February 19, 1986, police report in which Officer Peters wrote that on February 10, 1986:

> PSP Photo Laboratory located in Harrisburg was contacted relative to enlarging the photos where the strangulation marks are on the victim's throat and ankle. It was also requested that a piece of the hemp rope be photographed to indicate any striations which could be found on the throat of the victim. The negatives, along with the photographs pertaining to the marks on the victim's throat and ankle, along with a one inch piece of the hemp twine, was s[-][9] to the PSP Photo Lab in Harrisburg, PA.

[ECF No. 26, App. A, Ex. W].

Petitioner contends that this notation shows that a striation analysis and/or comparison was conducted. It does not. It shows only that Officer Peters asked the photo lab to do two things: (1) enlarge photographs of the strangulation marks on the victim's throat and ankle; and (2) photograph a piece of the hemp rope.[10] The PCRA Court reached the same conclusion when

---

[9]  The rest of this word is not legible on the copy of the police report submitted by Petitioner.

[10]  Petitioner does not allege that any of the photographs were withheld from the defense. In fact, it appears that they were admitted into evidence at the trial.

it considered this discovery request. (SCR No. 163, 6/12/02 Op. at 13 ("This Court agrees with the Commonwealth's statements ... that the PSP report does not indicate that a striation analysis was requested... As noted by the Commonwealth, no comparison report was ordered.")).

Based upon all of the foregoing, the Court concludes that Petitioner has not made specific factual allegations that demonstrate that there is good cause to warrant the discovery he requests in ¶ 7(e). Therefore, these requests will be denied.

### 5. Paragraph 7(m) – fingerprints

In ¶ 7(m), Petitioner requests the production of all latent prints collected in conjunction with the investigation of the victim's rape and murder and any print comparisons that were made.[11] These requests can be quickly disposed of. Although Petitioner claims that the prints are relevant to Claim II (his ineffective assistance of counsel claim) and Claim IV (his Brady claim), he does not explain why that is so. He also does not specifically allege that the prosecution withheld the prints or print comparisons from the defense, or that any print evidence was admitted against him at trial, or that any prints or print comparisons contain exculpatory information. (See Memorandum, ECF No. 33 at 9). Moreover, during oral argument before the PCRA court, Petitioner's counsel stated that he did not even know if any prints had been collected. (2/26/02 Tr. at 25-26). He also did not explain why the prints would advance any of Petitioner's claims. That is why the PCRA Court concluded that Petitioner failed to provide any

---

[11] Petitioner also requests significant additional information relating to any print collected. [See Motion, ECF No. 32 at ¶ 7(p)]. He did not seek that additional information in the motion for discovery that he filed with the PCRA Court and therefore this Court will not consider those requests. (See Renewed Motion For Discovery, SCR No. 160 at ¶ 13(f)).

specific basis to justify the grant of this discovery request. (6/11/02 Op. at 13-14).

For all of these reasons, the Court concludes that Petitioner has not shown that there is good cause to warrant the discovery he requests in ¶ 7(m). Therefore, these requests will be denied.

### 6.    Paragraph 7(p) – polygraph examination results

In Paragraph 7(p), Petitioner requests the production of "[a]ny and all polygraph examination results[.]"[12] The only individual that he identifies as having received a polygraph examination is Commonwealth witness Michael Ferry. Petitioner asserts that the results of that examination should be disclosed, but he does not explain why. He does not specifically allege that the prosecution withheld the results of the polygraph examination from the defense, or that the results contain exculpatory information.[13] [See Memorandum, ECF No. 33 at 13].

For all of these reasons, Petitioner has not established good cause for discovery of any and all polygraph examination results and his request at ¶ 7(p) will be denied.

### 7.    Paragraphs 7(z) – production of all property seized from Petitioner

In ¶ 7(z) , Petitioner makes the broad and nonspecific request for all property seized from

---

[12] Petitioner also requests "all documents relating to the testing process and containing or reflecting statements made by the examinees." [Motion, ECF No. 32 at ¶ 7(p)]. He did not seek this information in the motion for discovery that he filed with the PCRA Court and therefore this Court will not consider that request. (See *Renewed Motion For Discovery*, SCR No. 160 at ¶ 13(g)).

[13] In fact, during oral argument before the PCRA Court, both Petitioner's counsel and the Commonwealth's counsel stated that the results of Ferry's polygraph examination indicated "lack of deception." (2/26/02 Tr. at 26-27).

him.  There is no basis whatsoever for this Court to grant this request and it is denied for lack of good cause shown.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


DON TEDFORD,                                    )
        Petitioner,                          )
                                            )
        v.                                   )      CIVIL ACTION NO. 09-409
JEFFREY BEARD, Secretary,                       )
Pennsylvania Department of Corrections,         )
<u>et al.</u>,                                  )


## <u>ORDER</u>

AND NOW, this 28th day of September, 2010, it is hereby **ORDERED** that:

(1)      Petitioner's MOTION FOR DISCOVERY [ECF No. 32] is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** with respect to Petitioner's request in ¶ 7(x) for any previously undisclosed police reports regarding the "further investigation" referenced in the affidavit of probable cause. Respondents shall produce any such documents, if they exist, to counsel for Petitioner on or before **OCTOBER 19, 2010**. Petitioner's motion is **DENIED** in all other respects;

(2)      If Petitioner seeks an evidentiary hearing, counsel for Petitioner shall file a motion for such a hearing and memorandum in support on or before **November 23, 2010.** Therein, counsel must specifically set forth each claim on which an evidentiary hearing is sought and explain why, with respect to each claim, a hearing is authorized and/or justified under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(e)(2); and,

(3)      The response to the motion for an evidentiary hearing shall be filed by Respondents on or before **December 28, 2010.**


                                            BY THE COURT:


                                            s/ Terrence F. McVerry
                                            United States District Court Judge

cc: Notice by ECF to counsel of record