# EXHIBIT HH

I, Don Tedford, do hereby declare and verify as follows:

1. I was present in the court room every day of jury selection and trial. My attorney, Charles M. Schwartz, was also there every day.

2. State police officers Peters and Stanek sat at the prosecution's table in the court room every day of the trial. They were not sequestered and they heard all testimony.

3. Near the beginning of trial Schwartz objected to them sitting at the table and not being sequestered but the judge allowed it. That objection and conversation is not found in the trial transcript.

4. All throughout the trial District Attorney Cook inturrepted the defense questioning of witnesses. He repeatedly made aimless remarks, asked inane questions, answered questions asked of witnesses, and commented about what police reports said as opposed to what the witness said. For the most part those interruptions are no longer in the transcript.

5. During jury selection Donna Moore and Janet Chambers came into the court room and asked to be excused. They did not take the witness stand and they were not sworn under oath. Both stood off to the side of the court room, in the far right aisle, as the judge spoke to them. They knew what case they were there for but were not asked how they knew.

6. Donna Moore asked to be excused, saying her cousin Carol Shaffer was a witness in the case and was the neighbor of Dr. Timothy McCormick. That testimony is not found in the transcript.

7. Janet Chambers said she had business dealings me at the Finishing Touch. She said she ordered window treatments which were installed by a young man who came to her home. She said the man's name was Don but it was not me, it was another man named Don. Her testimony in the transcript, however, says I went to her home and did the installation.

8. I did not go to Ms. Chambers' home and install window treatments or anything else. I did not have the tools or knowledge to do installations, and the Finishing Touch did not make "service calls". We employed subcontract installers for carpeting, tile, window treatments, and so on.

9.    At the beginning of her jury selection testimony, Diane Perko stated, "I am a paralegal and there's no way he will get a fair trial the way everyone is talking about this down there [in the jury room]". That statement is not found in the transcript, and her transcript testimony now says she was an accountant, not a paralegal.

10.    After Ms. Perko testified, Schwartz asked for a mistrial. The judge denied. Then Schwartz whispered to me, "Well, we have enough for an appeal now." After that he seemed to just give up.

11.    After trial, Charlie Schwartz filed a single post verdeict motion on 20 April 1987: THE COURT ERRED BY REFUSING TO GRANT MISTRIAL AND OR CHANGE VENUE ... BY REASON OF THE CONSTANT AND REPEATED INDICATIONS BY PROSPECTIVE JURORS THAT KNOWLEDGE OF DEFENDANT TEDFORD'S PREVIOUS ARREST AND CONVICTION WAS WIDESPREAD AMONG THE JURY VENEER PRIOR TO ... VOIR DIRE. A Butler County Public Defender, Peter Shaffer, took over the case and changed that issue to one of pre-trial publicity despite my objections.

12.    At the end of the juror's box in the court room was a large plate glass window that looked out over Butler traffic and buildings on that side of the courthouse. Throughout the trial Juror No. 2, Perry Ray, sat staring out the window, seemingly uninterested in the trial. Seldom did he turn and look at witnesses or into the court room.

13.    I watched the jurors closely during trial. A female juror in the middle of the back row sat with her head down all through trial. It appeared she was napping or doing something with her hands in her lap, paying little to no attention to the trial.

14.    At the end of trial the judge directed that the jurors be fed lunch in the jury room during deliberations. He then instructed the jurors not to take books, notes, or anything in print with them into the jury room.

15.    Those instructions are not found in the transcript at the end of trial. However, it appears that part of the instruction, although altered, is at Trial Transcript page 404.

16.    Trial ended on Friday and the jury returned with a verdict very quickly. Schwartz told me the jurors were eager to end everything and get out for the weekend because they had been sequestered for two weeks. He said they were certainly predisposed to a verdict of guilty.

17.     The same Court Reporter recorded the selection of jurors and the trial. He recorded both proceedings stenographically and by sound-recording on cassette tapes. In addition, he stenographically and sound-recorded all of the sidebars during trial, the opening and closing statements, and in-chambers conferences which I attended. I watched as he meticulously set up and placed his stenograph and tape recorder for each event.

18.     Ten years later I finally received the sound-recordings of trial. Sound-recordings of jury selection, sidebars, and opening/closing statements were not included. The tapes I received reveal that portions of testimony in the official transcript are not consistent with sound-recorded testimony. Sounds heard in the recorded tapes suggests they are edited as well.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _1st_ day of _MARCH_, _2000_.

Don Tedford
Greene S.C.I.
175 Progress Drive
Waynesburg, Pa. 15370